UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAMEION NOLAN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 3:14-cv-00375 |
| ) | REEVES/SHIRLEY |
| JAMES HOLLOWAY, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM OPINION

This is a pro se prisoner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 1]. Respondent filed a response in opposition thereto, as well as a copy of the state record [Docs. 11 and 12]. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED.**

## I. PROCEDURAL HISTORY

On July 28, 2008, Petitioner signed a "waiver of trial by jury and request for acceptance of plea of guilty" for five counts of especially aggravated kidnapping, three counts of aggravated rape, and two counts of burglary [State Court Record Attachment 3, Exhibit 2 to transcript of hearing on petition for post-conviction relief]. Petitioner did not appeal the resulting convictions, but did file a petition for post-conviction relief, which the post-conviction court denied [State Court Record p. 105–110]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed this denial. *Nolan v. State*, No. E2012-0429-CCA-R3-PC, 2013 WL 335333, at *8 (Tenn. Crim. App. June 28, 2013), *perm. app. denied* (Tenn. Feb. 12, 2014).

## II.     BACKGROUND

The following factual background is taken from the TCCA's opinion on Petitioner's appeal of the denial of his petition for post-conviction relief:

> At the July 28, 2008, guilty plea hearing, the State explained to the trial court the factual basis for the pleas. The State said that shortly after 1:00 a.m. on June 3, 2007, the petitioner and his two codefendants, Shavon Page and Michael McMahan, entered the Knox County residence of the victims, W.P. and T.P., by forcing open the rear, basement door of the residence. All three defendants, armed with handguns, went into the victims' bedroom where they were sleeping. As the victims began to awaken, one of the defendants "pistol whipped" W.P. At gunpoint, the defendants made T.P. remove her clothing and ordered both victims to lie down on the floor. The defendants bound the victims with belts and other items from the victims' bedroom. The defendants took the jewelry that was in the bedroom, removed T.P.'s wedding ring from her finger, and demanded to know where the victims kept their money. W.P. revealed that his credit cards were in his downstairs office. After two defendants took W.P. downstairs, he gave them the cards and the pin number for one of the cards. The two defendants put W.P.'s collection of state quarters, which had an approximate value of $3,000, in one of W.P.'s camera bags and took the bag with them.
>
> While the two defendants and W.P. were downstairs, the defendant with T.P. forced her at gunpoint to perform fellatio on him. When the two defendants and W.P. returned to the bedroom, the defendants made W.P. lie on the floor and watch as they forced T.P. to perform fellatio on all three defendants. The petitioner's co-defendants also attempted to vaginally rape T.P. T.P. became nauseous after the rapes, and the defendants threatened to shoot her if she vomited. The defendants took T.P. downstairs at gunpoint and made her turn off the power to the residence's surveillance camera. During the incident, the defendants repeatedly threatened that if the victims "move[d] or talk[ed], . . . [the defendants] would blow [the victims'] heads off."
>
> Shortly before 4:00 a.m., the defendants left the residence by a patio door and got into an awaiting car. At 4:04 a.m., a security camera at the SunTrust Bank on Cedar Bluff Road recorded the petitioner in a car with at least two other individuals, using the victim's ATM card to withdraw $500 in cash.

Greg Faulkner of the Knox County Sheriff's Office later spoke with the petitioner, and the petitioner revealed the names of his co-defendants, Page and McMahan. Police searched the car the petitioner was driving and found the victims' jewelry in the glove compartment. On June 5, 2007, McMahan's mother, Tracie Bennet, went to Charlie's Pawn Shop on Kingston Pike, where she pawned a diamond heart-shaped pendant that belonged to T.P. DNA testing of samples from the defendants were compared with swabs taken from the victim during a rape kit, revealing sperm from Page and McMahan.

The petitioner entered guilty pleas to five counts of especially aggravated kidnapping and three counts of aggravated rape, Class A felonies, and for each conviction received a twenty-five-year sentence to be served at one hundred percent. The petitioner also pled guilty to two counts of aggravated robbery, a Class B felony, and was sentenced as a Range I, standard offender to twelve years, with release eligibility after serving thirty percent of the sentence in confinement. Finally, the petitioner pled guilty to one count of aggravated burglary, a Class C felony, and received a six-year sentence as a Range I, standard offender, with release eligibility after serving thirty percent of the sentence. The trial court ordered the sentences to be served concurrently, for a total effective sentence of twenty-five years at one hundred percent.

On June 4, 2009, the petitioner, acting pro se, filed a petition for post-conviction relief, and amended the petition on June 26, 2009. Thereafter, counsel was appointed, and four additional amended petitions were filed. On January 27, 2012, the post-conviction court held an evidentiary hearing on the petitions.

Before the petitioner testified at the hearing, post-conviction counsel asked that trial counsel be excluded from the courtroom during the petitioner's testimony based upon Tennessee Rule of Evidence 615, which governs the sequestration of witnesses. The State responded, "No, I'm asking him to stay. I think he's—he's the State's designated witness under the rule. He's the complained on lawyer, I think he's entitled to hear what the complaints are and respond to them." The post-conviction court overruled the petitioner's motion.

The twenty-two-year-old petitioner testified that he was seventeen years old when he was arrested. He said that he was never informed that he would be transferred from juvenile court to criminal court. He said that he did not want a preliminary hearing or transfer hearing in juvenile court because his main goal was to be released on bond.

The petitioner said that he met with trial counsel "[a] few times, a couple of times, maybe a handful or less than a handful of times" and that they discussed the facts of the case. During a meeting at the county jail on June 26, 2008, trial counsel advised the petitioner of a plea offer that would require him to serve twenty-five years in confinement. Counsel said that "due to some law or something," the petitioner would have to serve only seventeen years. The petitioner agreed to accept the plea. The petitioner asserted that trial counsel never advised the petitioner that he would be subject to community supervision for life or that he would be placed on the sexual offender registry.

The petitioner said that his guilty plea hearing took place on June 28, 2008, and that he signed the written plea agreement the same day. The written plea agreement did not include the provision that the petitioner was subject to community supervision for life or that he would be placed on the sexual offender registry.

The petitioner asserted that he would not have pled guilty had he known of the lifetime community supervision requirement. He had believed that after completing his term of incarceration, he "would be done with this case." The petitioner said that after his guilty pleas, he sent trial counsel a letter saying that he was not guilty of any of the charges and that he wanted to withdraw his guilty pleas.

On cross-examination, the petitioner acknowledged that he had been in juvenile court on two prior occasions. He said that he did not understand juvenile proceedings because "[n]o lawyer I ever had ever explained anything about none of my cases."

The petitioner said that after his arrest, he told the police of his involvement in the crime. He acknowledged that he knew the police had photographs of him using the victims' ATM card. Trial counsel told him that his co-defendants were not being offered a plea agreement and that as a condition of his pleas, he would be required to testify against them. Trial counsel said that the petitioner would receive a twenty-five-year sentence, of which he would serve seventeen years. The petitioner said that after he served seventeen years, he expected to "walk out of prison and not have to worry about anything else."

The petitioner stated that he met with trial counsel less than five times and that on one or two occasions, trial counsel brought an investigator to the meetings. Trial counsel never discussed whether the State's case against the petitioner was strong or weak. The petitioner maintained that counsel never mentioned that he would be subject to community supervision for life, asserting that the requirement "would have been a deal breaker." He learned of the

4

requirement "sometime in 2009" when, after arriving at the Tennessee Department of Correction, he looked at his judgments of conviction and saw a notation in the "special conditions" section that explained he was subject to lifetime community supervision following service of his sentences.

The petitioner acknowledged that he was not under the influence of drugs or alcohol at the guilty plea hearing and that he told the trial court he understood the proceedings and had no questions. The petitioner said that although he was innocent of the crimes, he followed trial counsel's advice and "just answer[ed] yes to the judge's questions."

Post-conviction counsel introduced as exhibits the original July 28, 2008 aggravated rape judgments of conviction and the October 16, 2008 corrected judgments of conviction. The original judgments of conviction did not provide for lifetime community supervision; however, the corrected judgments reflect that the petitioner was subject to community supervision for life.

Trial counsel testified that after he was appointed to represent the petitioner, he hired a private investigator and began investigating the case. Counsel spoke with the petitioner and with members of the petitioner's family. Trial counsel believed he understood the facts of the case and was prepared for trial. Nevertheless, based upon information from the petitioner, counsel thought, given the petitioner's youth and the strength of the State's proof against him, it was in the petitioner's best interest to negotiate a plea agreement. Counsel thought they did not "have a very winnable strategy."

Trial counsel told the petitioner that the charges he faced were based upon his own acts and his criminal responsibility for the acts of his co-defendants. The petitioner did not "like that concept [of criminal responsibility,] but he seemed to understand it very clearly." Trial counsel told the petitioner that he might be able to earn up to fifteen percent reduction credits on his sentence but that the credits "would be determined by the prison not by the judge."

Trial counsel said that he had lengthy discussions with the petitioner regarding the community supervision for life required upon his plea to aggravated rape. The private investigator was present during one of the discussions. Counsel explained:

> I had been involved with another lawyer in town on several of these cases when the—when the Marcus Ward case was being argued before the ruling and that—the idea of letting the defendants know that this is going to happen to them is something that a whole

> bunch of us, myself included, really started hammering a couple of years before this even happened with [the petitioner] because we all kind of saw that this was—this could happen.

Trial counsel said that the petitioner was very young and faced multiple charges that, if he were convicted, could result in a lengthy sentence. The petitioner's main concern was how quickly he could be released from custody. Trial counsel advised the petitioner that after completing the twenty-five-year sentence associated with the plea agreement, he would be young enough to do things he wanted, such as traveling. Trial counsel said he told the petitioner, "You're going to serve your time and be done and then you're going to have to go see these people. And then if you move to a different state, you got to go talk to them, but it's not too bad. It's only a couple times a year that you go talk to th[ese] people."

Trial counsel said that due to an issue with the media, there was a "break" during the petitioner's guilty plea hearing. The petitioner was "annoyed" by the media coverage because he did not want to be known as "a snitch." Trial counsel thought that he and the petitioner discussed the community supervision for life requirement again during the break.

On cross-examination, trial counsel said that he could not recall whether he had seen the petitioner's corrected aggravated rape judgments. During his representation of the petitioner, he advised the petitioner of his rights. Counsel stated that he had liked the petitioner and had felt sorry for him. He did not think the trial court had improperly advised the petitioner during the guilty plea hearing, and counsel would have informed the petitioner if the court had provided misinformation. Counsel noted that he did not "correct" the trial court about the need to inform the petitioner about the supervision requirement because "[t]he Ward case hadn't come out and I had reviewed the lifetime community supervision with [the petitioner] already in the plea discussions." Counsel denied ever receiving a letter from the petitioner stating that he wanted to withdraw his guilty pleas.

At the conclusion of the post-conviction hearing, the post-conviction court said:

> The Court has some trouble with—when you think about it that is a fairly incredible notion that a man who was so concerned that he might get a much larger sentence, apparently, he had exposure upwards toward 75 years. And in order to avoid that kind of exposure, he would agree to a sentence to

6

> serve in prison 25 years at 100 percent but he would not have done it if he'd known he had to check in with somebody and let the State know about his whereabouts when he got out of prison. That that would just be a super imposition but 25 years in prison he could live with. There is something fairly odd about that line of thinking.
>
> The post-conviction court accredited trial counsel's testimony that he advised the petitioner of the lifetime community supervision requirement. The court found that trial counsel thoroughly investigated the case, met with the petitioner several times, and advised the petitioner of the possible consequences of trial and of pleading guilty. The court said that even if the trial court failed to specifically warn the petitioner during the guilty plea hearing about the lifetime community supervision requirement, the petitioner had been advised of the requirement by counsel. Therefore, "it is classic harmless error." The post-conviction court concluded that counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered. On appeal, the petitioner challenges this ruling. He also challenges the post-conviction court's denial of his motion to remove counsel from the courtroom during the petitioner's testimony.

*Nolan v. State*, 2013 WL at *1–5 (footnotes omitted).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding

7

standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, findings of fact supported by the record are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner sets forth the following interrelated claims for relief under § 2254:

1. Whether his guilty plea was knowing and voluntary where the trial court failed to advise Petitioner of a direct punitive consequence thereof, namely lifetime supervision;

2. Whether "lifetime supervision" is a direct punitive consequence and failure to advise thereof invalidates a guilty plea; and

3. Whether trial counsel provided ineffective assistance of counsel by failing to advise Petitioner of the full consequences of pleading guilty, specifically lifetime supervision.

[Doc. 1 p. 4–10]. Although Petitioner lists these claims separately, they all involve the issue of whether Petitioner was informed that he would be subjected to lifetime supervision as a result of his guilty plea and the determination of whether Petitioner's guilty plea was therefore knowing and voluntary. As such, the claims are interrelated under the applicable law and the Court will address them together for purposes of judicial efficiency.

The record reflects that the state court held as follows on these claims:

> Underlying the petitioner's assertion that his trial counsel was ineffective and that his pleas were not knowingly and voluntarily entered is his complaint that trial counsel failed to advise him that he would be subject to community supervision for life after pleading guilty to aggravated rape. *See* Tenn. Code Ann. § 39–13–524(a). In support of his claims, the petitioner cites *State v. Ward,* 315 S.W.3d 461, 464 (Tenn. 2010), in which our supreme court examined the effect of a trial court's failure to advise a defendant during a guilty plea hearing of the consequences of being subject to community supervision for life. The court reiterated that for a guilty plea to be entered knowingly and voluntarily, a defendant must be aware of the "direct consequences" of the guilty plea and that "[t]he most obvious

8

direct consequence of a conviction is the penalty to be imposed. It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 474 (citation, internal quotations, and emphasis omitted). The court held that "the mandatory lifetime supervision requirement is an additional part of a defendant's sentence [; therefore,] the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." *Ward,* 315 S.W.3d at 474.

Our review of the transcript of the guilty plea hearing reveals that the trial court did not advise the petitioner that he would be subject to a lifetime of community supervision as a result of his guilty pleas to aggravated rape. Therefore, the trial court failed to advise the petitioner of the consequences of his guilty pleas. However, we note that this court has previously addressed this issue and concluded that "the holding in *Ward* is not to be applied retroactively in collateral proceedings such as petitions for post-conviction relief." *State v. Joshua Jermaine Whitehead,* No. E2012–00312–CCA–R3–CD, 2012 WL 4551345, at *5 (Tenn. Crim. App. at Knoxville, Oct. 3, 2012) (citing *Derrick Brandon Bush v. State,* No. M2011–02133–CCA–R3–PC, 2012 WL 2308280, at * 10 (Tenn. Crim. App. at Nashville, June 15, 2012), *perm. to appeal granted,* (Tenn. Oct. 17, 2012)). The petitioner pled guilty on July 28, 2008; our supreme court's *Ward* decision was not filed until July 7, 2010. Thus, *Ward* was not applicable at the time the petitioner entered his guilty pleas.

In any event, regarding the appellant's claim of ineffective assistance of counsel, the post-conviction court specifically accredited trial counsel's testimony that he was aware the *Ward* case was pending and that he repeatedly and thoroughly advised the petitioner that because of his aggravated rape convictions, he would be subject to community supervision for life. Nothing preponderates against the trial court's finding. Thus, the petitioner has failed to show that counsel rendered deficient performance.

As to whether the trial court's failure to advise the petitioner about the consequences of his guilty pleas rendered the pleas unknowing and involuntary, our supreme court stated in *Ward* that such error is subject to harmless error review. 315 S.W.3d at 476. To save the conviction, the State must "prove[ ] that the error was harmless

9

> beyond a reasonable doubt." *Id.* "If it can be shown that the defendant already knew what he was not advised, . . . the harmless nature of the error is classic.'" *Id.* (quoting *State v. Neal,* 810 S.W.2d 131, 139 (Tenn.1991)). Again, the trial court explicitly accredited trial counsel's testimony that he advised the petitioner of the requirement of community supervision for life, and the evidence does not preponderate against this finding. Therefore, the State has established that the trial court's error was harmless beyond a reasonable doubt.

*Nolan v. State*, 2013 WL at *7–8.

The record supports the above holdings. Specifically, the record establishes that the trial court did not inform Petitioner that lifetime supervision would be a consequence of his guilty plea at his sentencing [State Court Record, Attachment One p. 31–58], that neither Petitioner's guilty plea nor the original judgment[1] entered against him stated that Petitioner would be subjected to lifetime supervision [*Id.* at 88; State Court Record Attachment 3 Exhibit 2 to transcript of post-conviction hearing], and that Petitioner testified at the post-conviction hearing that counsel did not inform him of this consequence of his guilty plea [State Court Record, Attachment Two p. 34]. The record further reflects, however, that Petitioner's counsel also testified at the post-conviction hearing and stated therein that he informed Petitioner that lifetime supervision would be a consequence of the guilty plea, that an investigator was present when counsel advised Petitioner of this consequence, and that the investigator's notes from that meeting supported counsel's recollection [*Id.* at 82–85]. The record also demonstrates that the post-conviction court credited Petitioner's counsel's testimony over Petitioner's testimony regarding the issue of whether counsel informed Petitioner of the lifetime supervision consequence of the guilty plea and therefore found

---

[1] A corrected judgment against Petitioner did note that Petitioner was sentenced to community supervision for life after expiration of his sentence [State Court Record p. 89].

10

that Petitioner was not entitled to relief on this claim for ineffective assistance [State Court Record, Attachment One p. 105–09].

Habeas courts generally defer to trial court credibility findings, as the trial court is in the best position to determine witness credibility. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (holding that § 2254 does not give habeas courts "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). Even where reasonable minds could disagree about the credibility of a witness, that reasonable disagreement is not sufficient to allow the habeas court to override the trial court's determination as to credibility. *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). A habeas court may, however, overturn a trial court's credibility determination where the evidence is so powerful that the only possible conclusion is that the trial court was incorrect. *Miller-El v. Dretke*, 454 U.S. 231, 265 (2005).

As the record supports the trial court's finding that Petitioner's counsel informed Petitioner that he would be subject to lifetime supervision as a consequence of his guilty plea and that counsel therefore was not deficient with regard to this issue, Petitioner is not entitled to relief based on this claim for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

Accordingly, although the record establishes that the judge accepting Petitioner's guilty plea did not inform Petitioner of the lifetime supervision consequence when accepting Petitioner's guilty plea, the record also demonstrates that Petitioner was aware of this consequence. As such, any error by the court in not informing Petitioner of the lifetime supervision consequence of his guilty plea did not affect Petitioner's substantive rights and was harmless. *United States v. Smagola*, 390 F. App'x 438, 442–43 (6th Cir. 2010) (holding that a failure to inform a defendant

that he will be subjected to supervised release affects a defendant's substantial rights where nothing in the record suggests that the defendant knew his sentence would include supervised release); *Ward v. State*, 315 S.W.3d 461, 476–477 (Tenn. 2010) (holding that where a trial court fails to inform a defendant of a direct consequence of his guilty plea, but the record shows that the defendant already knew of the consequence, it is "classic" harmless error).

Thus, even if the Court assumes that lifetime supervision was a direct punitive consequence to Petitioner's guilty plea, Petitioner is not entitled to relief.

Accordingly, Petitioner has not established that the state courts' denial of Petitioner's claims regarding the trial court and/or counsel's failure to inform Petitioner of the lifetime supervision consequence of his guilty plea was contrary to or an unreasonable application of clearly established federal law, or that this denial was an unreasonable determination of the facts in light of the evidence presented. As such, Petitioner is not entitled to relief under § 2254.

## V. CONCLUSION

For the reasons set forth above, the Court finds that none of Petitioner's claims warrant issuance of a writ. Therefore, Petitioner's petitions for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED.**

## VI. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the

court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. Specifically, Petitioner has not shown that counsel was deficient or that any error affected his substantial rights. Accordingly, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER**:

_____
**UNITED STATES DISTRICT JUDGE**